KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR0794-L |
| | ) | |
| Plaintiff, | ) | HEARING DATE:    May 19, 2008 |
| | ) | TIME:                  2:00 p.m. |
| v. | ) | |
| | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTIONS TO: |
| | ) | |
| LACEY DESIREE ESPINOZA, | ) | (1)    COMPEL DISCOVERY/PRESERVE |
| | ) |         EVIDENCE; |
| Defendant. | ) | (2)    DISMISS DUE TO GRAND JURY |
| | ) |         INSTRUCTIONS; |
| | ) | (3)    SUPPRESS STATEMENTS; AND |
| | ) | (4)    GRANT LEAVE TO FILE FURTHER |
| | ) |         MOTIONS. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF FACTS, |
| | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES |
| | ) | |
| | ) | |

1    COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2    KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States

3    Attorney, and hereby files its Response and Opposition to Defendant's above-referenced motions.  This

4    Response and Opposition is based upon the files and records of the case together with the attached

5    statement of facts and memorandum of points and authorities.

6                                                          **I**

7                                      **STATEMENT OF THE CASE**

8    On March 18, 2008, a Indictment was returned in the Southern District of California charging

9    Defendant Lacey Desiree Espinoza ("Defendant") with importation of 57.10 kilograms (approximately

10   125.62 pounds) marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of 57.10 kilograms

11   (approximately 125.62 pounds) marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

12   On March 18, 2008, the Court arraigned Defendant on the Indictment and entered a not guilty plea.  The

13   Court scheduled a motion hearing date of April 21, 2008.  At the motion hearing, the Court continued

14   to the matter to May 19, 2008 so the Parties could resolve discovery issues.

15   On April 7, 2008, Defendant filed motions to compel discovery, dismiss, suppress, and grant

16   leave to file further motions.  The United States now responds to Defendant's motions.

17                                                         **II**

18                                     **STATEMENT OF FACTS**

19   **A.    Primary Inspection**

20   On Monday, March 3, 2008, at approximately 1:17 a.m., CBP Officer Sanchez was working

21   primary vehicle inspection lane four at the Calexico, California, West Port of Entry ("POE").  Defendant

22   applied for admission to the United States as the driver and sole occupant of a 1989 Chrysler 300M,

23   bearing California license plate 5YMW519 ("the vehicle").  CBP Officer Sanchez asked Defendant to

24   open the trunk.  Defendant hesitated and appeared not to know how to open the trunk.  CBP Officer

25   Sanchez obtained a negative customs declaration from Defendant.  CBP Officer Sanchez asked

26   Defendant where she was coming from and she stated, " I left my stepfather at the bus stop."  CBP

27   officer Sanchez asked Defendant who owned the vehicle.  She shuddered, "Alonso."  CBP Officer

28   Sanchez referred Defendant and the vehicle to the secondary inspection area.  CBP Officer Sanchez

1   observed Defendant driving away from the secondary lot and appeared to be driving away from the port.

2   CBP Officer Sanchez yelled "Port Runner," and ran towards the vehicle at which point Defendant

3   stopped and made a sharp left turn into the secondary area.

4   **B.    Secondary Inspection**

5   Upon entering the secondary inspection area, CBP Officer Thomas directed Defendant into the

6   secondary area. CBP Officer Thomas took control of the vehicle inspection. Defendant stated that she

7   did not know where to go. CBP Officer Thomas received a negative customs declaration and a claim

8   of United States citizenship from Defendant. CBP Officer Thomas asked Defendant if she was the

9   owner of the vehicle. She stated that it belonged to her stepfather. Defendant told CBP Officer Thomas

10  that she lived in Bakersfield, California and had traveled to take her stepfather to the bus station in

11  Mexicali. CBP Officer Parrish was conducting a lot sweep with his assigned Human/Narcotics

12  Detection Dog. The dog alerted to the vehicle. CBP Officer Parish informed CBP Officer Thomas of

13  the alert. CBP Officer Thomas escorted Defendant to the secondary office. CBP Officer Thomas

14  returned to the vehicle, conducted an intensive inspection, and found packages hidden inside the

15  vehicle's spare tire well. CBP Officer Thomas advised Defendant that she was under arrest.

16  CBP Officer Thomas discovered twenty-five (25) packages containing a green-leafy substance,

17  which field-tested positive for marijuana. The packages were removed from inside the spare tire well.

18  CBP Officer Thomas also took several photographs of the vehicle, the vehicle's compartment, and the

19  contraband that was seized. The marijuana was processed and turned over to the Seized Property

20  Custodian pending transfer to the Drug Enforcement Administration laboratory.

21  Special Agent Rafael Silva and Special Agent Douglas Struckmeyer responded to the POE.

22  Special Agent Silva searched the vehicle for personal belongings.

23  **C.    Defendant's Statements**

24  On March 3, 2008, at approximately 7:01 a.m., Special Agent Silva obtained biographical

25  information including Defendant's age and employment status. Next, Special Agent Silva advised

26  Defendant of her <u>Miranda</u> rights in the English language as witnessed by Special Agent Struckmeyer.

27  Special Agent Silva read each right to Defendant and asked her if she understood each right. Defendant

28

1   acknowledged that she understood each right and wrote her initials on a pre-printed <u>Miranda</u> rights form

2   next to each right to indicate her understanding.  All of this was recorded on video.

3        Special Agent Silva asked Defendant to read the statement "Waiver of Rights" out loud and

4   asked Defendant if she understood.  Defendant acknowledged and waived her rights agreeing to answer

5   questions.

6        Special Agent Silva explained to Defendant that she had been arrested for the importation of a

7   controlled substance.  Special Agent Silva told Defendant that it was important to make truthful

8   statements.

9        Defendant started by saying that she did not know what she had in the vehicle. Alonso Felix

10  Samanyego is the owner of the vehicle.  She refers to Felix as her stepfather.  On Friday, February 29,

11  2008, Felix picked her up at her residence in Bakersfield and asked her to accompany him to Mexicali

12  so he can catch a bus to Sonora.  Defendant and Felix arrived in Mexicali on that same night and booked

13  two hotel rooms.  Defendant stayed inside her hotel room waiting for Felix to catch a bus.  On Sunday,

14  March 2, 2008, Felix finally caught a bus.

15       In Defendant's personal belongings, there was a note which was written on Sunday, March 2,

16  at 5:50 p.m. She wrote this note on a page she ripped from a Mexican phone book.  Special Agent

17  Struckmeyer asked Defendant if she wrote this note and she stated she did.  In this note, Defendant says;

18  "I have to wait for skillet to get back but my cell phone is completely dead" and "those pinchi pisas

19  better get back soon cause I wanna go home" among other things.  Special Agent Struckmeyer asked

20  Defendant who is skillet.  She stated that he was a friend from Bakersfield.  Special Agent Struckmeyer

21  asked her if skillet had accompanied them to Mexicali.  Defendant stated that skillet was not in Mexicali

22  with them.  Special Agent Silva then asked Defendant what she meant by "pinchi pisas."  She stated that

23  she referred to pisas as Mexicans.  Special Agent Silva asked Defendant why she referred to Mexicans

24  as plural if she stated only her and Felix drove down to Mexicali.  Defendant responded that Felix left

25  with somebody when he went to buy his ticket.

26       Defendant then changed her story.  She stated that she had never met Felix before and that a

27  friend of hers who she did not want to identify asked her to ride with Felix to Mexicali.  Defendant

28  admitted to lying to the primary and secondary officers about dropping her stepfather at a bus station.

### III

### MOTION TO COMPEL DISCOVERY

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The United States has already delivered 60 pages of discovery to defense counsel including investigative reports and Defendant's statements. Prior to production, Defendant made a series of discovery requests. The following is the United States' response to Defendant's various discovery requests.

#### 1.    Statements of Defendant

The United States has already produced reports disclosing the substance of Defendant's oral and written statements. The United States will continue to produce discovery related to Defendant's statements made in response to questions by agents. Relevant oral statements of Defendant are included in the reports already provided. Agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

#### 2.    Arrest Reports and Notes

The United States has provided Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension.

Defendant may also request TECS reports. The United States objects to this request. The United States does not intend to provide Defendant with Custom's TECS information unless the United States decides to introduce such evidence pursuant to Rule 404(b). See United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999). Otherwise, such evidence is only available to the defendant if it is "relevant to the development of a possible defense," United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990)

08CR0794-L

1   (citations and quotations omitted), or it "enable[s] the accused to substantially alter the quantum of proof

2   in his favor." <u>United States v. Marshall</u>, 532 F.2d 1279,1285 (9th Cir. 1976). Defendant has shown

3   neither.

4       **3.    Brady Material**

5       Again, the United States is well aware of and will continue to perform its duty under <u>Brady v.</u>

6   <u>Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976) to disclose exculpatory

7   evidence within its possession that is material to the issue of guilt or punishment. Defendant, however,

8   is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

9   or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>, 611

10  F.2d 770 (9th Cir. 1980), it must be noted that:

11      [T]he prosecution does not have a constitutional duty to disclose every bit of information
        that might affect the jury's decision; it need only disclose information favorable to the
12      defense that meets the appropriate standard of materiality. [Citation omitted.]

13  <u>Id</u>. at 774-775.

14      The United States will turn over evidence within its possession which could be used to properly

15  impeach a witness who has been called to testify.

16      Although the United States will provide conviction records, if any, which could be used to

17  impeach a witness, the United States is under no obligation to turn over the criminal records of all

18  witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

19  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

20  chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d

21  1305, 1309 (9th Cir. 1979).

22      Finally, the United States will continue to comply with its obligations pursuant to <u>United States</u>

23  <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

24      **4.    Sentencing Information**

25      Defendant claims that the United States must disclose any information affecting Defendant's

26  sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83

27  (1963). The United States respectfully contends that it has no such disclosure obligation.

28

1    The United States is not obligated under <u>Brady</u> to furnish a defendant with information which

2    he already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  <u>Brady</u> is a rule of

3    disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the

4    defendant.  In such case, the United States has not suppressed the evidence and consequently has no

5    <u>Brady</u> obligation.  <u>See</u> <u>United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

6    But even assuming Defendant does not already possess the information about factors which

7    might affect his guideline range, the United States would not be required to provide information bearing

8    on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

9    to his sentencing date.  <u>See</u> <u>United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No

10   [<u>Brady</u>] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

11   remains in value.").  Accordingly, Defendant's demand for this information is premature.

12   **5.    Defendant's Prior Record**

13   The United States has already provided Defendant with a copy of Defendant's criminal record

14   in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

15   **6.    Proposed 404(b) Evidence**

16   Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

17   of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of

18   such evidence and information about such bad act at the time the United States' trial memorandum is

19   filed.  However, to avoid any arguments concerning lack of notice, the United States intends to introduce

20   Defendant's prior crossing as evidence of knowledge and lack of mistake.  Also, Defendant has an arrest

21   on September 20, 2007, for possession of a controlled substance which the United States may seek to

22   introduce as evidence of knowledge and lack of mistake.

23   **7.    Evidence Seized**

24   The United States has, and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant

25   an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within

26   the possession, custody or control of the United States, and which is material to the preparation of

27   Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were

28   obtained from or belong to Defendant, including photographs.

1    The United States, however, need not produce rebuttal evidence in advance of trial.  United
2    States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

3    **8.    Preservation of Evidence**

4    The United States will preserve all evidence to which Defendant is entitled to pursuant to the
5    relevant discovery rules.  However, the United States objects to Defendant's blanket request to preserve
6    all physical evidence.

7    The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant
8    an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within
9    his possession, custody or control of the United States, and which is material to the preparation of
10   Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were
11   obtained from or belong to Defendant, including photographs.  The United States has made the evidence
12   available to Defendant and Defendant's investigators and will comply with any request for inspection.

13   **9.    Tangible Objects**

14   Again, the United States is well aware of and will fully perform its duty under Brady v.
15   Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory
16   evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,
17   is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused,
18   or which pertains to the credibility of the United States' case.

19   The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant
20   an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within
21   the possession, custody or control of the United States, and which is material to the preparation of
22   Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were
23   obtained from or belong to Defendant, including photographs.

24   The United States, however, need not produce rebuttal evidence in advance of trial.
25   United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

26   / / /

27   / / /

28   / / /

1

    **10.**    **Bias or Motive to Lie**

2          The United States is unaware of any evidence indicating that a prospective witness is biased or

3   prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

4   witnesses have a motive to falsify or distort testimony.

5

    **11-12.**  **Impeachment and Evidence of Criminal Investigation**

6          As stated previously, the United States will turn over evidence within its possession which could

7   be used to properly impeach a witness who has been called to testify.

8          Although the United States will provide conviction records, if any, which could be used to

9   impeach a witness, the United States is under no obligation to turn over the criminal records of all

10  witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

11  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

12  chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

13  1305, 1309 (9th Cir. 1979).

14

    **13.**    **Evidence Affecting Perception, Etc.**

15          The United States is unaware of any evidence indicating that a prospective witness has a

16  perception, recollection, communication, or truth telling problem.

17

    **14.**    **Witness Addresses**

18          The United States will provide Defendant with a list of all witnesses which it intends to call in

19  its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a

20  list is not required.  See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter,

21  806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  Defendant,

22  however, is not entitled to the production of addresses or phone numbers of possible witnesses of the

23  United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v.

24  Thompson, 493 F.2d 305, 309 (9th Cir. 1977).  Defendant has already received access to the names of

25  potential witnesses in this case in the investigative reports.

26

    **15.**    **Witnesses Favorable to Defendant**

27          The United States is not aware of any witness who made a favorable statement concerning

28  Defendant.

08CR0794-L

1    **16.    Statements Favorable to Defendant**

2    The United States is not aware of any witness who made a favorable statement concerning

3    Defendant.

4    **17.    Jencks Act Material**

5    Again, the United States will comply with its obligations pursuant to Brady v. Maryland, 373

6    U.S. 83 (1963), United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Jencks Act.

7    **18.    Giglio Information**

8    As stated previously, the United States will comply with its obligations pursuant to Brady v.

9    Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991),

10    and Giglio v. United States, 405 U.S. 150 (1972).

11    **19.    Reports of Scientific Tests or Examinations**

12    The United States will comply with its obligations pursuant to Rule 16. At trial, the United

13    States intends to offer testimony of a valuation, chemist, and fingerprint expert to identify Defendant

14    as the person who smuggled in this case. The United States will provide the qualifications of the

15    experts, if any. The United States will provide a summary of their reports when they are available.

16    **20.    Henthorn Material**

17    The United States will review the personnel files of all federal law enforcement individuals who

18    will be called as witnesses in this case for Brady material. Pursuant to United States v. Henthorn, 931

19    F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States

20    agrees to "disclose information favorable to the defense that meets the appropriate standard of

21    materiality . . ." Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain

22    about the materiality of the information within its possession in such personnel files, the information

23    will be submitted to the Court for in camera inspection and review.

24    **21.    Informants and Cooperating Witnesses**

25    Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a

26    per se rule that the United States must disclose the identity and location of confidential informants used

27    in a case. Rather, the United States Supreme Court held that disclosure of an informer's identity is

28    required only where disclosure would be relevant to the defense or is essential to a fair determination

1   of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth

2   Circuit held:

3       The trial court correctly ruled that the defense had no right to pretrial discovery of
        information regarding informants and prospective government witnesses under the

4       Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v.
        Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5

6   Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact

7   anything to disclosure, at this point in the case.

8       That being said, the United States is unaware of the existence of an informant in this case.

9   However, as previously stated, the United States will provide Defendant with a list of all witnesses

10  which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed,

11  although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir.

12  1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907,

13  910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone

14  numbers of possible witnesses of the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th

15  Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already

16  received access to the names of potential witnesses in this case in the investigative reports.

17      **22.    Expert Witnesses**

18      Defendant requests written reports and summaries of any expert testimony pursuant to Federal

19  Rules of Criminal Procedure 16(a)(1)(G). The United States will disclose to Defendant the name,

20  qualifications, and a written summary of testimony of any expert the United States intends to use during

21  its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

22      At trial, the United States will offer the testimony of a valuation expert and forensic chemist.

23  Moreover, the United States may offer the testimony of a Fingerprint Expert to establish Defendant's

24  identity and prior history. The United States will provide a summary, and qualifications of the experts

25  when they are available.

26      **23.    Residual Requests**

27      The United States objects to this request. The United States has and will continue to comply

28  with its discovery obligations.

1

**IV**

2

**THE GRAND JURY WAS PROPERLY INSTRUCTED**

3

**A.    Introduction**

4    Defendant makes contentions relating to two separate instructions given to the grand jury during

5    its impanelment by District Judge Larry A. Burns on January 10, 2007.  Although recognizing that the

6    Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally

7    found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond

8    the text of the approved instructions, and by so doing rendered them improper to the point that the

9    Indictment should be dismissed.

10    In making his arguments concerning the two separate instructions Defendant urges this Court

11    to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were

12    discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked

13    instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers

14    over grand jury procedures.  This is a practice the Supreme Court discourages as Defendant

15    acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's

16    operational separateness from its constituting court, it should come as no surprise that we have been

17    reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury

18    procedure.").  Isgro reiterated:

19        [A] district court may draw on its supervisory powers to dismiss an indictment.
        The supervisory powers doctrine "is premised on the inherent ability of the federal
20      courts to formulate procedural rules not specifically required by the Constitution or
        Congress to supervise the administration of justice." Before it may invoke this power,
21      a court must first find that the defendant is actually prejudiced by the misconduct.
        Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free
22      from the substantial influence of [the misconduct]"-a dismissal is not warranted.

23    974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an

24    attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution

25    as a reason to dismiss the Indictment.  (Def.'s Mot. at 9 ("A grand jury so badly misguided is no grand

26    jury at all under the Fifth Amendment.").)  Concerning that kind of a contention Isgro stated:

27        [A] court may dismiss an indictment if it perceives constitutional error that interferes
        with the grand jury's independence and the integrity of the grand jury proceeding.
28      "Constitutional error is found where the 'structural protections of the grand jury have
        been so compromised as to render the proceedings fundamentally unfair, allowing the

1    presumption of prejudice' to the defendant." Constitutional error may also be found "if
2    [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence
3    of the grand jury is substantially infringed."

4    974 F.2d at 1094 (citation omitted).[1]

5        The portions of the two relevant instructions approved in Navarro-Vargas were:

6        You cannot judge the wisdom of the criminal laws enacted by Congress, that is,
7    whether or not there should or should not be a federal law designating certain activity
     as criminal.  That is to be determined by Congress and not by you.

8    408 F.3d at 1187, 1202.

9        The United States Attorney and his Assistant United States Attorneys will
10   provide you with important service in helping you to find your way when confronted
     with complex legal problems.  It is entirely proper that you should receive this
11   assistance. If past experience is any indication of what to expect in the future, then you
     can expect candor, honesty, and good faith in matters presented by the government
12   attorneys.

13   408 F.3d at 1187, 1206.

14       Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional

15   because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law,

16   then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[2]  408 F.3d

17   at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy

18   or legal justification for the law; it receives no briefs or arguments from the parties.  The grand jury has

19   little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

20       Concerning the "United States Attorney and his Assistant United States Attorneys" instruction,

21   the court stated:

22       We also reject this final contention and hold that although this passage may
23   include unnecessary language, it does not violate the Constitution.  The "candor,

24       [1] In Isgro the defendants choose the abrogation of constitutional rights route when asserting that
25   prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d
     at 1096 (relying on Williams, the appellate court stated that "we find that there was no abrogation of
26   constitutional rights sufficient to support the dismissal of the indictment.").

27       [2] The Court acknowledged that as a matter of fact jury nullification does take place, and there
     is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to
28   return a no bill because they regard the law as unwise at best or even unconstitutional.  For all the
     reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open
     to examination."  408 F.3d at 1204 (emphasis in original).

13                                                  08CR0794-L

1  honesty, and good faith" language, when read in the context of the instructions as a
2  whole, does not violate the constitutional relationship between the prosecutor and grand
   jury. . . .  The instructions balance the praise for the government's attorney by informing
3  the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the
   prosecution and reminding them that the grand jury is "independent of the United States
4  Attorney[.]"

5  408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand

6  jury of the presumption of regularity and good faith that the branches of government ordinarily afford

7  each other." Id.

8       **B.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

9       Concerning whether the new grand jurors should concern themselves with the wisdom of the

10  criminal laws enacted by Congress, Judge Burns' full instruction stated:

11       You understood from the questions and answers that a couple of people were excused,
         I think three in this case, because they could not adhere to the principle that I'm about
12       to tell you.

13            But it's not for you to judge the wisdom of the criminal laws enacted by
         congress; that is, whether or not there should be a federal law or should not be a federal
14       law designating certain activity is criminal is not up to you.  That's a judgment that
         congress makes.
15
              And if you disagree with the judgment made by congress, then your option is not
16       to say "Well I'm going to vote against indicting even though I think that the evidence is
         sufficient" or "I'm going to vote in favor of even though the evidence may be
17       insufficient."  Instead, your obligation is to  contact your congressman or advocate for
         a change in the laws, but not to bring your personal definition of what the law ought to
18       be and try to impose that through applying it in a grand jury setting.

19  Partial Transcript pp. 8-9.

20       Defendant acknowledges that Judge Burns failed to limit the instruction consistent with Navarro-

21  Vargas.  Defendant contends that this addition to the approved instruction, "flatly bars the grand jury

22  from declining to indict because the grand jurors disagree with a proposed prosecution." (Def.'s Mot.

23  at 2.) In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction

24  renders irrelevant the debate about what the word "should" means.  (Def.'s Mot. at 6.)  This argument

25  mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one.  They do not.

26       Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

27  the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

28  Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

                                            14                                    08CR0794-L

expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that.  That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the term "should" was germane.[3/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows discretion on the grand jury not to indict.[4/]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

---

[3/]  That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.  To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[4/]  The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.  The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.  As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment." 408 F.3d at 1206.

1

2          The function of the grand jury, in federal court at least, is to determine probable
       cause. That's the simple formulation that I mentioned to a number of you during the jury
       selection process. Probable cause is just an analysis of whether a crime was committed
3      and there's a reasonable basis to believe that and whether a certain person is associated
       with the commission of that crime, committed it or helped commit it.

4          If the answer is yes, then as grand jurors your function is to find that the probable
       cause is there, that the case has been substantiated, and it should move forward. If
5      conscientiously, after listening to the evidence, you say "No, I can't form a reasonable
       belief has anything to do with it, then your obligation, of course, would be to decline to
6      indict, to turn the case away and not have it go forward.

7    Partial Transcript pp. 3-4.

8          Probable cause means that you have an honestly held conscientious belief and
       that the belief is reasonable that a federal crime was committed and that the person to be
9      indicted was somehow associated with the commission of that crime. Either they
       committed it themselves or they helped someone commit it or they were part of a
10     conspiracy, an illegal agreement, to commit that crime.

11         To put it another way, you should vote to indict when the evidence presented to
       you is sufficiently strong to warrant a reasonable person to believe that the accused is
12     probably guilty of the offense which is proposed.

13
     Partial Transcript p. 23.
14
           While the new grand jurors were told by Judge Burns that they could not question the wisdom
15
     of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not
16
     to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded
17
     from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential
18
     jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus,
19
     there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising
20
     its supervisory powers.
21
           Further, a reading of the dialogues between Judge Burns and the three excused jurors reflects
22
     a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the
23
     grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be
24
     construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury
25
     of their duties.
26
           Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced
27
     thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision
28

                                              16                        08CR0794-L

1   to indict was free from the substantial influence of [the misconduct]--a dismissal is not warranted."

2   Isgro, 974 F.2d at 1094.

3       C.    **The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution**

4

5       Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

6   U.S. Attorneys, Judge Burns variously stated:

7       [T]here's a close association between the grand jury and the U.S. Attorney's Office.

8           . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

9

10  Partial Transcript p. 11.

11      [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.

12  They generally work together.

13  Partial Transcript p. 12.

14      Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out

15  there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the

16  U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

17  Partial Transcript p. 20.[5]

18      As a practical matter, you will work closely with government lawyers. The U.S.

19  Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely

20  proper that you should receive the assistance from the government lawyers.

21      But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any

22  indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good

23  faith in all matters presented to you.

24  Partial Transcript pp. 26-27.

25  ─────────────

26  [5] Just prior to this instruction, Judge Burns had informed the grand jurors that:

27  [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another

28  side to the story.

Partial transcript p. 19.

1    Defendant cites the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts

2    against what they may be asking you to do if they're aware of that evidence." (Def.'s Mot. at 9.)

3    Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can

4    expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and

5    . . . they'll act in good faith in all matters presented to you.'" (Def.'s Mot. at 9.) From this lash-up

6    Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.
>
> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

19   (Def.'s Mot. at 9.) (Emphasis added.)[6/]

20       Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that

21   cuts against what they may be asking you to do if they're aware of that evidence," is directly

22   contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no

23   obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor

---

[6/] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

can be said to have a binding obligation to present it."[7/]  (emphasis added)).  See also United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."  (citing Williams) (emphasis added)).

However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[8/]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[9/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

---

[7/]  Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings."  504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.  974 F.2d at 1096.

[8/]  He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[9/]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

1   (Emphasis added.)[10/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of

2   Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the

3   policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a

4   subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."

5   (Emphasis added.)[11/]

6        The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed

7   guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.

8   No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-

9   imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the

10  prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory

11  evidence exists.[12/]  If it does exist, as mandated by the USAM, the evidence should be presented to the

12  grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by

13  an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand

14  jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because

15  there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In

16  cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from

17

18      [10/]  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge
19  Burns did not know of this provision in the USAM while he was a member of the United States
    Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge
20  overseeing the grand jury he certainly could determine the required duties of the United States Attorneys
    appearing before the grand jury from that source.

21      [11/]  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this
22  new section does not bestow any procedural or substantive rights on defendants.

23      Under this policy, the government's disclosure will exceed its constitutional obligations.
        This expanded disclosure policy, however, does not create a general right of discovery
24      in criminal cases. Nor does it provide defendants with any additional rights or remedies.

25  USAM 9-5.001, ¶ "E."  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

26      [12/]  Recall Judge Burns also told the grand jurors that:

27      [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
        trial, you're likely in most cases not to hear the other side of the story, if there is another
28      side to the story.

Partial transcript p. 19.

08CR0794-L

1    its investigation or from submissions tendered by the defendant.[13]  There is nothing wrong in this

2    scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory

3    evidence, or even if some exculpatory evidence were presented, the evidence presented represents the

4    universe of all available exculpatory evidence.

5        Further, just as the instruction language regarding the United States Attorney attacked in

6    Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408

7    F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

8    concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

9    not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

10   while reviewing Williams established that there is nothing in the Constitution which requires a

11   prosecutor to give the person under investigation the right to present anything to the grand jury

12   (including his or her testimony or other exculpatory evidence), and the absence of that information does

13   not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there

14   exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty

15   on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

16   since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed

17   policy.[14]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was

18   unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast

19   an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or

20   any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates

21   Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory

22   comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that

23   it stands between the government and the accused and is independent," which was also required by

24

25   [13]  Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

26

27

28   [14]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1    Navarro-Vargas. 408 F.3d at 1207.  In this context, the unnecessary "duty-bound" statement does not

2    mean the instructions were constitutionally defective requiring dismissal of this indictment.

3          The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

4    the "'structural protections of the grand jury have been so compromised as to render the proceedings

5    fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

6    can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

7    the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

8    infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other

9    indictment, need not be dismissed.

10                                         **V**

11    **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED**

12          Defendant moves to suppress all of her statements arguing they were involuntary or the Miranda

13    waiver was deficient.  (Def.'s Mot. at 10.)  However, Defendant's pre-arrest statement are admissible

14    since they did not require a Miranda warning.  Defendant's post-arrest statements were made after she

15    waived her Miranda rights.  Thus, all of Defendant's statements are admissible.

16          **A.    Defendant's Motion Should Be Denied Without a Hearing**

17          The Court can and should deny Defendant's motion to suppress without a hearing.  Under Ninth

18    Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4),

19    a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant

20    adduces specific facts sufficient to require the granting of Defendant's motion.  United States v. Batiste,

21    868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any

22    material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary

23    hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion

24    containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on

25    defendant's motion to suppress statements); Crim. L.R. 47.1.  The Ninth Circuit has stated that an

26    allegation of a Miranda violation that is mere boilerplate language fails to demonstrate there is a

27    disputed factual issue requiring an evidentiary hearing.  See United States v. Howell, 231 F.3d 616, 620-

28    23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only

1    when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the

2    trial court to conclude that contested issues of fact exist.").

3         Under Local Rule 47.1(g), the declaration supporting a motion must set predicate facts and show

4    "affirmatively that the declarant is competent to testify." Finally, pursuant to Local Rule 47.1(g)(4),

5    "[e]ach declarant . . . shall be made available for cross-examination at the hearing of the motion. . . ."

6         Here, in clear opposition to Local Rule 47.1(g), Defendant has failed to attach a declaration

7    creating an issue of fact regarding Defendant's pre-arrest or post-arrest statements. As such, this Court

8    should deny Defendant's motion to suppress, based on the Statement of Facts attached to the Complaint

9    in this case, and find that all of Defendant's statements were voluntarily made. If the Court chooses to

10    hold an evidentiary hearing on Defendant's motion, the United States would welcome the opportunity

11    to prove that Defendant's statements were voluntary and are, therefore, admissible.

12              **B.    Defendant's Pre-arrest Statements Are Admissible**

13         Defendant's pre-arrest statements are admissible. In Miranda v. Arizona, 396 U.S. 868 (1969),

14    the Supreme Court held that under the Fourth Amendment a person must be advised of his rights prior

15    to incriminating questioning after custodial arrest. A Miranda warning was not necessary for

16    Defendant's pre-arrest statements for two reasons. First, Defendant was not in custody when she was

17    questioned. Second, Defendant was not subjected to incriminating questioning while in custody.

18         First, to determine whether a person is in custody for purposes of Miranda, a court looks to the

19    circumstances surrounding the interrogation. See United States v. Bravo, 295 F.3d 1002, 1004 (9th Cir.

20    2002) ("whether an individual in custody depends upon the objective circumstances of the situation, or

21    whether "'a reasonable innocent person . . . would conclude that after brief questioning he or she would

22    not be free to leave."'"). As previously discussed, Defendant was not in custody during her time at the

23    POE. Thus, there was no need for Miranda warnings.

24         Second, to determine whether questioning is "interrogation" within the meaning of Miranda, a

25    court looks to whether "under all of the circumstances involved in a given case, the questions are

26    reasonably likely to elicit an incriminating response from the suspect." United States v. Salgado, 292

27    F.3d 1169, 1172 (9th Cir. 2002) (internal quotations and citations omitted); United States v.

28    Mata-Abundiz, 717 F.2d 1277, 1278-79 (9th Cir. 1983) ("If an INS investigator has no reason to suspect

1   that the question asked is likely to elicit an incriminating response, there is no interrogation and,

2   therefore, no <u>Miranda</u> violation."); <u>see also</u> <u>United States v. Troise</u>, 796 F.2d 310, 314 (9th Cir. 1986)

3   (detaining a person for routine border questioning is not custodial interrogation).  Consistent with

4   <u>Salgado</u>, Defendant was asked inspection questions that were not likely to lead to incriminating

5   response.  <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited

6   prior to <u>Miranda</u> warnings during procedures "necessarily attendant to the police procedure [are] held

7   by the court to be legitimate" and admissible).  As such, there is no <u>Miranda</u> violation.

8          Following the arrest of Defendant after discovery of the drugs, Special Agents timely advised

9   Defendant that she was under arrest.  Defendant was also timely advised of her <u>Miranda</u> warnings,

10  which she waived.  All statements prior to Defendant's arrest are admissible; and this Court should deny

11  the motion to suppress any statements made prior to arrest.

12          **C.    <u>Defendant's Post-arrest Statements Are Admissible</u>**

13          Defendant argues that her post-arrest statements were involuntary without any facts.  However,

14  Defendant validly waived her rights.

15          The United States must establish only by a preponderance of the evidence that a defendant

16  knowingly and intelligently waived his or her <u>Miranda</u> rights.  <u>United States v. Doe</u>, 60 F.3d 544, 546

17  (9th Cir. 1995) (citing <u>Colorando v. Connelly</u>, 479 U.S. 157, 168-69 (1986)).  "'Whether there has been

18  a valid waiver depends on the totality of the circumstances, including the background, experience, and

19  conduct of the defendant.'"  <u>United States v. Bautista-Avila</u>, 6 F.3d 1360, 1365 (9th Cir. 1994) (quoting

20  <u>United States v. Bernard S.</u>, 795 F.2d 749, 751 (9th Cir. 1986)).  Evidence that defendants understand

21  their <u>Miranda</u> rights after such rights are explained is the preeminent factor in determining the validity

22  of a waiver.  <u>See, e.g.</u>, <u>Doe</u>, 60 F.3d at 546 (waiver valid where defendant indicated he understood his

23  rights and agreed to speak with officers); <u>Bautista-Avila</u>, 6 F.3d at 1366; <u>Bernard S.</u>, 795 F.2d at 752.

24  To determine voluntariness, the Court must "consider the totality of the circumstances and determine

25  whether 'the government obtained the statement by physical or psychological coercion or by improper

26  inducement so that the suspect's will was overborne.'"  <u>United States v. Harrison</u>, 34 F.3d 886, 890 (9th

27  Cir. 1994) (citations omitted).

28

1    Here, the totality of the circumstances makes clear that Defendant waived her right to remain

2  silent.  Special Agents advised Defendant of her <u>Miranda</u> rights.  Defendant stated she understood her

3  rights and waived her right to remain silent.  She even initialed and signed a form.  In response to

4  questioning, Defendant provided a detailed account of the incident.  Defendant was coherent, gave

5  responsive answers to questions, and was able to remember the incident.  Thus, Defendants' post-arrest

6  statements are admissible.

7        **D.**    **Routine Booking Information**

8    Finally, upon arresting Defendant, Special Agents asked Defendant routine booking questions

9  for the purpose of obtaining background biographical information for filling out a personal history report

10  and a booking slip.   "Routine gathering of background biographical data does not constitute

11  interrogation sufficient to trigger constitutional protections." <u>United States v. Perez</u>, 776 F.2d 797, 799

12  (9th Cir. 1985); <u>see also</u> <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 600-602 (1990).  Thus, Defendant's

13  responses to the Special Agents' booking questions therefore should be admitted.

14                            **VI**

15      **DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

16    Defendant's motion for leave to file further motions should be denied except to the extent that

17  such motions are based on new discovery.

18                            **VII**

19                       **CONCLUSION**

20    For the foregoing reasons, the United States asks that the Court deny Defendant's motions,

21  except where unopposed, limit further motions to those based on new law or facts.

22        DATED: May 15, 2008                    Respectfully submitted,

23                                      KAREN P. HEWITT
                                       United States Attorney
24

25                                      *s/Christopher M.  Alexander*
                                       CHRISTOPHER M. ALEXANADER
26
                                       Assistant United States Attorney
27                                      Attorneys for Plaintiff
                                       United States of America
28                                      Email: Christopher.M.Alexander@usdoj.gov

                            25                              08CR0794-L

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.   08CR0794-L |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| LACEY DESIREE ESPINOZA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

    I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action.  I have caused service of United States' Response and Opposition to Defendant's Motions to (1) compel discovery/preserve evidence; (2) dismiss; and (3) grant leave to file further motions, together with memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.    Norma Aguilar, Esq.
      Atty for Defendant

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on May 15, 2008.

                        *s/Christopher M. Alexander*
                        CHRISTOPHER M. ALEXANDER